UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

JASON ROSS,

    PLAINTIFF,

vs. ) CAUSE NO: 1:20-cv-642

FEDEX FREIGHT

    DEFENDANT. )

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. Nature of the Case**

1. The plaintiff, Jason Ross, drove trucks for Defendant for almost thirteen (13) years, without a single blemish on his driving Record. In 2012, Ross was diagnosed with Bell's Palsy. Beginning in 2014, Ross began experiencing related serious health complications and pain requiring ongoing dental treatment and pain management. Accordingly, Ross was prescribed pain medicine by a licensed medical professional. When a allegedly random drug test identified the prescribed medicine, Fedex terminated Ross without regard to drug testing procedures or Ross's rights under the Americans with Disabilities Act or Family and Medical Leave Act. Ross brings this action against his former employer, Fedex, alleging that it violated Title III of the Americans with Disabilities Act ("ADA"), as amended, *42 U.S.C. §§ 12181-12189* and the Family Medical Leave Act, *29 U.S.C. § 2601 Et Seq.* by discriminating

against him due to his disability, by failing to accommodate his disability, by disclosing confidential medical information, by retaliating against him for engaging in protected activity, and by intentionally inflicting emotional distress.

## II. Parties

2. Plaintiff, Jason Ross, is a resident of Marion County and was an employee of Fedex, as contemplated by the ADA, and FMLA until Fedex terminated his employment.
3. Defendant, Fedex Freight, is a for-profit corporation doing business in Indianapolis Indiana.
4. Fedex is an "employer" as that term is defined by *42 U.S.C. § 2000e(B)*.

## III. Jurisdiction And Venue

5. This Court has jurisdiction over this action pursuant to *28 U.S.C. § 1331 and § 1343(a)* and *42 U.S.C. § 2000e-5*, as amended.
6. Venue is proper pursuant to *28 U.S.C. § 1391(c)* as Fedex conducts business in the southern District of Indiana and all facts, events, and transactions giving rise to this lawsuit occurred within the geographic environs of the Southern District of Indiana.
7. At all times relevant to this action, Ross was an "employee" as that term is defined by *42 U.S.C. § 2000e(f)*.
8. Ross satisfied his obligation to exhaust administrative remedies, by timely filing a charge of discrimination (Charge No. 470-2019-04328), *Exhibit A*, with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") alleging

discrimination on the basis of disability, failure to accommodate his disability, disseminating confidential medical information, violations of the FMLA, and retaliation. Ross received his Notice of Right to Sue from the EEOC on December 1, 2019, and brings this original action within ninety (90) days of receipt thereof, *Exhibit B*.

### IV. Factual Allegations

9. In 2012, Ross was diagnosed with Bell's Palsy and experienced an ongoing serious dental condition, causing functional disability in his jaw and debilitating pain. He was prescribed pain medicine to manage the pain and to treat his disability. He also experiences hearing loss. He has undergone medical procedures to address symptoms.
10. He receives ongoing pain management and was scheduled for an additional surgery prior to Fedex's decision to terminate his employment. His disability requires him to take prescribed medicine as needed in order for him to fully participate in the workplace
11. Due to his disability, Ross is substantially limited in the major life activities of sleeping, hearing, and working. These limitations require reasonable accommodations in order for him to perform his job at the workplace.
12. With reasonable accommodations in place, Ross was capable of performing every task associated with his position.
13. Fedex was aware of Ross's disability and the necessity for Ross to take the prescribed medicine as needed.

14. Ross was hired by Fedex on June 5, 2006, as a truck driver.

15. During his thirteen (13) years with Fedex, he had a perfect driving record.

16. Beginning in 2014, Ross began experiencing serious health complications and pain requiring ongoing dental treatment and procedures.

17. At this time, a Dentist licensed to practice medicine in the State of Indiana prescribed to Ross hydrocodone-Acetaminophen to use to manage his pain on an as needed basis.

18. Ross never renewed the prescription, but did take the prescribed medicine when the pain required it.

19. Ross informed Fedex on two separate occasions that a Doctor prescribed him the medication.

20. Ross informed both road manager: Adam Mason, and Safety Manager, Kurt Graft, that he needed to take the medicine on occasion. Mr. Graft recorded the prescription and returned the medicine to Ross.

21. Fedex did not require Ross to visit a Medical Review Officer concerning his prescribed medicine.

22. In 2018, Ross requested medical leave under the Family and Medical Leave Act ("FMLA") for ear surgery due to complications caused by his condition.

23. Fedex failed to act on his request, requiring Ross to cancel the needed procedure.

24. As his pain and condition worsened, Ross again submitted a requests for FMLA leave in March of 2019. His request was once again ignored by Fedex.

25. During the following weeks, Ross inquired about his request for medical leave on several occasions as a surgery to relieve his pain and to avoid additional hearing loss continued to be necessary.

26. Ross reported to work on April 1, 2019.

27. On April 1, 2019, Fedex required Ross to submit to an allegedly random drug test.

28. This was the first "and only random" drug test Fedex required Ross to take.

29. On April 8, 2019 at 1:43 PM, Dr. Lopez contacted Ross, informing him that the drug test was positive for hydrocodone.

30. Ross informed the Doctor that the drug was prescribed to him by a licensed medical provider to manage his pain caused by his medical condition.

31. Dr. Lopez requested Ross to fax him his prescription.

32. Also during the conversation between Ross and Dr. Lopez, Dr. Lopez stated that Fedex was demanding the test result immediately and that he would have to report a positive result until he received the prescription.

33. Ross faxed the prescription to Dr. Lopez the following morning on April 9, 2019.

34. On April 10, 2019 at 10:33 AM, a Fedex manager left a voicemail on Ross's phone, terminating Ross's employment based on the positive drug test for a prescribed medicine.

35. Ross was instructed to report to the facility to turn in his badge.

36. Later that week, Dr. Lopez reversed the drug test result to negative based on the prescription provided by Ross.

37. Ross also informed Fedex that he took a single dose of his prescribed medicine on March 30, 2019 at approximately 6:30 A.M. He did not work again until April 1, 2019.

38. Ross provided the original prescription to Dr. Lopez but could not obtain a letter of explanation from the prescribing Doctor, as he had since retired.

39. Ross offered to visit another Doctor and to take a subsequent drug test.

40. Fedex refused to permit Ross to obtain a safety letter from a Medical Review Officer.

41. On April 21, 2019, Fedex compounded its error by confirming its decision to terminate Ross's employment.

42. On or about April 19, 2019, Ross phoned Fedex's Human Resources department to ask if there was anything he could do to remedy the situation. He was told "You will never get your fucking job back."

43. Fedex failed to follow the procedures required by Department of Transportation Final Rule 49 CFR part 40.

44. Fedex subsequently reported to Ross's future potential employers that he was terminated for a positive drug test even though Dr. Lopez reversed the test to a negative result.

45. On May 22, 2019, Ross mercifully completed the surgery that he needed for the better part of year but was denied because Fedex refused to approve his FMLA request. The delay caused him to experience additional hearing loss and significant pain.

46. Interestingly, Ross was prescribed the same medicine to treat his pain following surgery that resulted in the false positive drug test and termination of employment.

47. Ross filed his Charge of Discrimination with the Equal Employment Opportunity Commission on September 9, 2019, complaining of discrimination, discrimination based on his disability, failure to accommodate, his disability, illegal dissemination of confidential medical information, and retaliating against him for requesting medical leave. He received his right to sue letter on December 1, 2019.

48. The reason provided by Fedex to terminate Ross's employment was pretextual.

49. Fedex's blanket policy of prohibiting any employee who has been prescribed a controlled substance from working is a violation of the Americans with Disabilities Act.

50. But for Fedex's failure to accommodate Ross's disability, blatant discrimination, and unconscionable disregard for his condition and the requirements of the ADA and FMLA, Ross would still be employed by Fedex.

51. Ross received positive performance reviews and had a perfect driving record.

52. Fedex's actions were intentional, willful and in reckless disregard of Ross's rights as protected by Federal law.

53. Ross was and continues to be economically, physically, and emotionally harmed by Fedex's discriminatory and harassing actions.

### V. Count I:  Discrimination under the Americans with Disabilities Act

54. Ross hereby incorporates paragraphs one (1) through fifty-three (53) of his Complaint herein.

55. Ross was diagnosed with Bell's Palsy, has ongoing pain management issues, and hearing loss. He is limited in the major life activities of sleeping, hearing, and working.  These limitations require reasonable accommodations in order for him to perform his job at the workplace.  Accordingly, he has a disability as contemplated by the Americans with Disabilities Act.

56. Ross satisfied Fedex's work requirements.

57. Fedex violated the ADA by terminating Ross's employment and discriminating against him due to his disability.

58. Fedex treated Ross less favorably in the terms, privileges, and conditions of his employment than similarly-situated coworkers without a disability.

59. Fedex's actions were intentional, willful, and/or undertaken in reckless disregard of Ross's rights as protected by the ADA.

60. Ross has suffered damages as a result of Fedex's unlawful actions.

### VII. Count II:  Retaliation under the ADA

61. Ross hereby incorporates paragraphs one (1) through sixty (60) of his complaint herein.

62. Ross's requests for reasonable accommodations, including but not limited to the appropriate use of a prescribed medicine,  constituted protected activity.

63. Similarly-situated employees, who did not engage in protected activity, were treated more favorably in the terms, privileges, and conditions of their employment.

64. Fedex unlawfully retaliated against Ross because he engaged in protected activity.

65. Fedex acted with intent, malice, and or reckless disregard as to Ross's legal rights under the ADA.

66. Ross was harmed as a result of Fedex's conduct.

## VIII. Count III: Failure to Accommodate under the Americans with Disabilities Act

67. Ross hereby incorporates paragraphs one (1) through sixty-six (66) of his complaint herein.

68. Ross has a disability, as defined by the ADA.

69. Ross informed Fedex of his disability and Fedex was aware of his requested reasonable accommodations, including but not limited to the appropriate use of a prescribed medicine.

70. Fedex refused to accommodate Ross's disability.

71. Fedex terminated Ross's employment after depriving him of the accommodation.

72. Ross was harmed as a result of Fedex's conduct.

## IX. COUNT IV: Confidentiality Violations of the ADA

73. Ross hereby incorporates paragraphs one (1) through seventy-two (72) of his complaint herein.

74. Ross provided confidential medical and disability-related evidence and documents, including but not limited to prescriptions, controlled substances, and test results, to the appropriate officials of Fedex.

75. Fedex's employees had access to confidential medical and disability-related information concerning Ross's condition.

76. Fedex employees disseminated the confidential medical and disability-related information to both employees of Fedex and potential employers who had no need to be aware of Ross's condition.

77. Fedex acted with intent, malice, and or reckless disregard as to Ross's legal rights under the ADA and federal law.

78. Ross was harmed as a result of Fedex's conduct.

### X.  Count V:  Intentional Infliction Of Emotional Distress

79. Ross hereby incorporates paragraphs one (1) through seventy-eight (78) of his complaint herein.

80. Fedex acted intentionally or recklessly in the treatment and harassment of Ross by ignoring his requests for accommodations, exacerbating his condition through unconscionable disregard for his wellbeing, and discrediting his ability to perform his job because he was using prescribed medication to manage his disability-related pain.

81. Fedex's conduct was extreme and outrageous.

82. Fedex's acts were and are the cause of Ross's distress.

83. Ross suffers severe emotional distress as a result of Fedex's conduct, requiring medical attention and ongoing treatment.

### XI.  Count VI:  Violations of the Family and Medical Leave Act

84. Ross hereby incorporates paragraphs one (1) through eighty-three (83) of his complaint herein.

85. Fedex interfered with Ross's attainment of rights in violation of the FMLA.

86. Fedex's actions were intentional, willful, and/or undertaken in reckless disregard of Ross's rights as protected by the FMLA.

87. Ross suffered damages as a result of Defendant's unlawful actions.

### Relief Requested

WHEREFORE, Plaintiff, Jason Ross, requests that this Court find in his favor and provide him with the following relief:

A. Enjoin Fedex from engaging in further violations of the ADA and FMLA;

B. Order Fedex to rehire Ross with all commensurate compensation, benefits and seniority or payment of front pay in lieu thereof;

C.	Order Fedex to pay to Ross wages, benefits, compensation, and all monetary losses suffered as a result of Defendant's wrongful and unlawful actions in an amount that will make him whole;

D.	Order Fedex to pay to Ross liquidated damages;

E.	Order Fedex to pay to Ross compensatory damages;

F.	Order Fedex to pay Ross's costs and attorney fees incurred in litigating this action;

G.	Order Fedex to pay to Ross pre- and post-judgment interest on all sums recoverable; and

H.	Order Fedex to provide to Ross any and all other legal and/or equitable relief that may be just and proper.


Respectfully submitted,


_____
S/ Michael S. Dalrymple
Michael S. Dalrymple, (23539-53)
Michael S. Dalrymple, Attorney at Law
1627 CarrolltonAvenue
Indianapolis, Indiana 46202
(317) 614-7390
michaeld@dalrymple-law.com
Attorney for Plaintiff, Jason Ross

Case 1:20-cv-00642-JMS-MJD   Document 1   Filed 02/26/20   Page 13 of 15 PageID #: 13

## DEMAND FOR JURY TRIAL

The Plaintiff, Jason Ross, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

_____
S/ Michael S. Dalrymple

Michael S. Dalrymple, (23539-53)

Michael S. Dalrymple, Attorney at Law

1627 CarrolltonAvenue

Indianapolis, Indiana 46202

(317) 614-7390

michaeld@dalrymple-law.com

Attorney for Plaintiff, Jason Ross

## CERTIFICATE OF SERVICE

I certify that on the 26th day of February, 2020, I served the foregoing to all parties via the Electronic Case Filing System.

S/ Michael S. Dalrymple
Michael Dalrymple, #23539-53